UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIE BELL, JR.,

    Plaintiff,

v.

DR. CHI NGUYEN and DR. ANDREW WISE,

    Defendants.

Case No. 13-1987 WHO (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Doc. No. 24

## INTRODUCTION

In this federal civil rights action brought under 42 U.S.C. § 1983, plaintiff Willie Bell alleges that two dentists, employees of the Correctional State Prison ("CTF") in Soledad, where Bell was previously incarcerated, were deliberately indifferent to his serious dental needs in violation of the Eighth Amendment. The dentists move for summary judgment.[1] For the reasons stated herein, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The parties have different views of the facts. Although none of the differences is material to the issue of whether either defendant was deliberately indifferent to Bell's serious dental needs, the different perspectives are highlighted below.

**I. Defendants' View of the Facts**

Dr. Chi Nguyen, one of the defendants, is a dentist employed by the California

---

[1] Bell filed an unsolicited surreply and a declaration, (doc. nos. 29, 30), after the briefing was completed. Those papers are largely duplicative of his earlier arguments and will not be considered by the Court. *See* Civil L.R. 7-3(d) (once reply is filed, no additional memoranda or papers may be filed without prior Court approval).

1

1  Department of Corrections and Rehabilitation ("CDCR") who worked at CTF and treated
2  Bell from December 2008 through October 2011. (Nguyen Dec. ¶¶ 1-2, 8-15, 27.)
3       During that time period, an inmate would request a dental appointment by filling
4  out a Health Care Services Request, CDCR Form 7362, ("HCSR") or by asking a staff
5  person to contact the dental department. (*Id.*) Each newly admitted inmate would see a
6  CDCR dentist who would assign the inmate a Dental Priority Classification Code ("DPC")
7  based upon the occurrence of any disease, significant malfunction or injury and
8  medical/dental necessity. (*Id.* ¶ 7.) A new DPC would be assigned to the inmate after
9  each dental appointment. (*Id.*) The DPC procedure was put in place to ensure that all
10 inmate-patients would have equitable access to dental services based on the severity of
11 their dental need. (*Id.*) Each DPC Code indicates a specific timeframe for the next dental
12 appointment. (*Id.*)
13      Nguyen first saw Bell on December 29, 2008, when he was complaining of a
14 sensitive upper left tooth. (*Id.* ¶ 8.) Nguyen performed a triage examination. (*Id.*)
15 Nguyen observed wear on the biting service of tooth number 11, the upper left cuspid.
16 (*Id.*) This is often an indication that the patient grinds his teeth, which can wear the
17 enamel down and make the teeth sensitive. (*Id.*) After the examination, Nguyen
18 scheduled Bell for a comprehensive examination and assigned him a DPC-2, which is the
19 designation for interceptive care and treatment within 120 days. (*Id.*)
20      Nguyen next saw Bell on March 3, 2009 for another triage examination. *Id.*
21 ¶ 9.) Bell told Nguyen that his tooth number 14 had been throbbing, but was better. (*Id.*)
22 Bell's x-rays showed bone loss and heavy calculus on tooth number 14. (*Id.*) Nguyen
23 diagnosed tooth number 14 with occlusal trauma, a condition where pain results from the
24 patient biting down on something hard, and where the pain dissipates over time if the
25 patient eats on the other side of the mouth. (*Id.*) Bell was assigned a DPC-2 and
26 scheduled for a comprehensive examination. (*Id.*)
27      Nguyen next saw Bell on May 28, 2009 for a comprehensive examination. (*Id.*
28 ¶ 10.) She reviewed x-rays taken on May 19, 2009 and noted that Bell had a small,

United States District Court
Northern District of California

1  pigmented macule (spot) on the roof of his mouth. (*Id.*) She observed moderate wear on
2  the biting surfaces of his teeth, indicating that he grinds his teeth, moderate to heavy
3  calculus and moderate periodontitis (gum disease and bone loss). (*Id.*) These are
4  indications of poor oral hygiene and bone loss over many years. (*Id.*) Nguyen instructed
5  Bell on proper care for his teeth and scheduled him for scaling and root planing ("SRP"), a
6  deep cleaning of the teeth and root surfaces below the gums. (*Id.*) Bell was assigned a
7  DPC-2. (*Id.*)

8  Nguyen next saw Bell on August 25, 2009, when she performed a periodontal
9  examination which revealed deep periodontal pockets indicating moderate bone loss. (*Id.*
10  ¶ 11.) A deep periodontal pocket forms when the ligament surrounding the tooth separates
11  from the base of the tooth. (*Id.*) The pocket attracts bacteria and is difficult to clean. (*Id.*)
12  After this examination, Bell was assigned a DPC-2. (*Id.*)

13  On September 10, 2009, Nguyen treated Bell's periodontitis on the right side of his
14  mouth. (*Id.* ¶ 12). Nguyen gave Bell local anesthesia, but he was still sensitive to scaling
15  and root planing when she removed the calculus. (*Id.*) Nguyen noted that Bell would need
16  more local anesthetic at the next cleaning. (*Id.*) Bell was given a DPC-2 and scheduled
17  for a SRP treatment on the left side of his mouth. (*Id.*)

18  On November 19, 2009, Nguyen continued treatment of Bell's periodontitis on the
19  left side of his mouth. (*Id.* ¶ 13.) She gave him a stronger local anesthetic. (*Id.*) She
20  informed Bell that he had decay on the surfaces of tooth number 14, the upper left first
21  molar, and tooth number 16, the upper left third molar. (*Id.*) Bell was given a DPC-2 and
22  scheduled for an appointment for filling teeth numbers 14 and 16. (*Id.*)

23  On February 2, 2010, Nguyen filled Bell's teeth numbers 14 and 16. (*Id.* ¶ 14).
24  The cavities were extensive. (*Id.*) To fill each cavity, Nguyen placed a base on the
25  deepest part of the cavity before condensing the amalgam and restoring the tooth. (*Id.*) In
26  instances like this, where the cavities are deep enough to require a base, Nguyen instructs
27  the patient to monitor the tooth for future symptoms and she so instructed Bell. (*Id.*) Bell
28  was assigned a DCP-2. (*Id.*)

1    On February 17, 2010, Dr. Jennings, an oral surgeon, examined Bell for the macule
2    on the roof of his mouth.  (*Id.* ¶ 16.)  Dr. Jennings recommended that Bell have an
3    excisional biopsy.  (*Id.*)  On March 25, 2010, Nguyen saw Bell for a triage examination.
4    (*Id.* ¶ 17).  On April 27, 2010, Bell had oral surgery to remove the macule.  (*Id.* ¶ 18.)

5    On May 3, 2010, Nguyen saw Bell for a post-operation visit.  (*Id.* ¶ 19.)  She noted
6    that he was taking morphine sulfate and Tylenol for pain.  (*Id.*)  Bell had no complaint of
7    pain.  (Id.)  Nguyen scheduled Bell for night-guard impressions.  (*Id.*)  A night-guard
8    would help manage Bell's grinding of his teeth during sleep.  (*Id.*)  Bell was assigned a
9    DPC-3.  (*Id.*)

10   On June 14, 2010, Nguyen saw Bell for a triage visit.  (*Id.* at 20).  He had no
11   complaints of pain.  Nguyen re-scheduled him for night-guard impressions.  (*Id.*)  He
12   remained a DPC-3.  (*Id.*)  On September 23, 2010, Nguyen took impressions of Bell's
13   teeth for a night-guard.  (*Id.* ¶ 21).  Bell remained a DPC-3.  (*Id.*)

14   On October 14, 2010, Nguyen saw Bell for a periodic examination and x-rays.  (*Id.*
15   ¶ 22).  She delivered the night-guard to him and advised him on how to use it and take
16   care of it.  (*Id.*)  Bell indicated he was concerned about gum recession on the side of tooth
17   number 14, his upper left first molar.  (*Id.*)  He had no complaints of pain.  (*Id.*)  Nguyen
18   instructed Bell on proper brushing and flossing technique because she concluded that
19   Bell's gum recession was caused by improper brushing and flossing.  (*Id.*)

20   Nguyen did not examine Bell again until September 2011.  Bell's medical records
21   indicate that, from October 2010 through September 2011, he was seen on at least four
22   occasions by other CTF dentists and staff for continued treatment of his periodontal
23   disease and other dental conditions.  (*Id.* ¶ 23).  During this time, his dental priority
24   remained a DPC-3, the designation for routine rehabilitative care.  (*Id.*)  The records do not
25   indicate that Bell complained of pain at any of these visits.  (*Id.*)

26   On August 29, 2011, Bell filled out a HCSR form stating that staff had drilled a
27   hole in his tooth and he was in pain.  (*Id.* ¶ 24).  This request was received by the dental
28   department on September 1, 2011.  (*Id.*)  On the same day the request was received, Bell

United States District Court
Northern District of California

1 was seen by Dr. Marlais for a triage examination. (*Id.* ¶ 25.) Bell told Dr. Marlais that
2 there was a hole in tooth number 16 and that he had been feeling pain in that tooth off and
3 on for a few weeks. (*Id.*) Dr. Marlais ordered an x-ray. (*Id.*) After his examination, Dr.
4 Marlais recommended extraction or sedative filling of tooth number 16. (*Id.*) Bell was
5 receiving morphine and acetaminophen for pain unrelated to his tooth. (*Id.*)

6 On September 25, 2011, Bell filled out an HCSR form again stating that there was a
7 hole in his tooth and he was experiencing throbbing pain. (*Id.* ¶ 26.) The form was
8 received by the dental department on September 26, 2011. (*Id.*) The next day, September
9 27, 2011, Bell saw Nguyen at the dental clinic for an emergency appointment. (*Id.* ¶ 27.)
10 Nguyen observed incipient decay, inflamed gums and advanced bone loss around tooth
11 number 16 and diagnosed it with hyperemia, a condition that occurs when an injury,
12 infection or irritant causes the blood vessels around the tooth's pulp to dilate, resulting in
13 painful pressure. (*Id.*) Nguyen attempted to explain this to Bell, who insisted that there
14 was a hole in his tooth. (*Id.*) Bell became argumentative and belligerent and Nguyen
15 called a Correctional Officer to remove him from the clinic. (*Id.*) Nguyen recommended
16 extraction of tooth number 16 as soon as possible. (*Id.*) She noted that the CTF medical
17 department had prescribed Bell acetaminophen (Tylenol) and morphine sulfate for pain
18 that was unrelated to his tooth pain. (*Id.*) Therefore, she did not prescribe additional pain
19 medication for Bell. (*Id.*) Nguyen raised Bell's priority status to a DPC 1c and scheduled
20 him for extraction of tooth number 16. (*Id.*)

21 On September 30, 2011, Dr. Marlais extracted Bell's tooth number 16. (*Id.* ¶ 28.)
22 He prescribed Motrin, for pain, and Amoxicillin, an antibiotic. (*Id.*) Dr. Marlais
23 scheduled Bell for a post-operative visit a week later. (*Id.*)

24 On October 7, 2011, Bell saw Dr. Andrew Wise, the second defendant, for the post-
25 operative appointment. (*Id.* ¶ 29.) Wise noted the extraction site had no swelling, pain or
26 bleeding and was healing normally. (*Id.*) Bell was classified a DPC-4. (*Id.*)

27 Nguyen states that, at no time during her treatment of Bell did she intend to delay in
28 providing him dental treatment or to cause him pain, suffering or harm. (*Id.* ¶ 31.) She

United States District Court
Northern District of California

1    also states that, at all times during her treatment of Bell, she was motivated by genuine
2    concern for his health and well-being. (*Id.*)

3    **II. Bell's View of the Facts**

4        Bell agrees that Dr. Nguyen performed the work stated above. However, he states
5    that, on November 19, 2009, when Nguyen performed the deep cleaning of his teeth and
6    gums on the left side of his mouth, she accidentally caused a hole to be drilled in his upper
7    left molar, tooth number 16. (Opp, Ex. a, Statement of Facts, ¶ 1.)[2] The next time Bell
8    saw Nguyen, he mentioned the hole to her, but she pretended not to hear him. (*Id.*) When
9    Bell saw Nguyen about the mouth-guard, he mentioned the hole in his tooth to her and
10   asked if she would fill it. (*Id.* ¶ 4.) Nguyen told him the tooth could not be filled and that
11   it was best to leave it alone because removing food particles from it would cause irritation
12   and pain. (*Id.* ¶ 5.) Nguyen told Bell that, because he did not have all of his teeth in the
13   back of his mouth, it was best not to do anything to irritate tooth number 16 and to leave it
14   alone until the time came for it to be extracted. (*Id.*) Bell thought that, if the tooth can't be
15   fixed, he would "hang on to it" until he could no longer stand it. (*Id.*)

16       Time passed, and Bell received his mouth-guard. (*Id.* ¶ 6.) That process turned out
17   well. (*Id.*)

18       Beginning in June 2011, Bell began to experience throbbing pain in tooth number
19   16. (*Id.* ¶ 7.) On August 29, 2011, Bell sent in a health care request form indicating that
20   he was in pain and requesting immediate dental care. (*Id.* ¶ 8.) Bell was "ducated" to see
21   Wise on September 1, 2011.[3] (*Id.*) Bell told the x-ray technician that Nguyen had
22   accidentally drilled a hole in the side of his tooth while she was cleaning his teeth. (*Id.*)
23   The x-ray technician stated that the x-ray showed that the pain was from bone loss and not
24   a hole. (*Id.*) Bell believed she was lying to protect Nguyen. (*Id.*)

---

[2] For the purposes of this motion, it is assumed that whether Nguyen drilled a hole in Bell's tooth is disputed even though no records support Bell's allegation and the inference from the exhibits is to the contrary.

[3] The parties do not define the term, "ducat." From the context of the sentences in which it appears, it seems to mean a written appointment to see a particular dentist.

Bell also told Wise about the hole in his tooth. (*Id.* ¶ 11). Wise first stated there was no hole. (*Id.*) This made Bell angry because he thought Wise also was protecting Nguyen. (*Id.*) However, when Wise checked tooth number 16 with a mirror, he said he did see a hole. (*Id.*) Even though Wise saw the hole and knew that Bell was in excruciating pain, he did not treat him at that time. (*Id.* ¶ 12.)

On September 25 and 26, Bell filed emergency health care requests, but was told no dentist was in. (*Id.* ¶ 16.) On September 27, 2011, an appointment was made for Bell to see Nguyen. (*Id.* ¶¶ 18-19). Bell attempted to explain to Nguyen about the hole in his tooth and she denied that there was a hole. (*Id.* ¶ 20.) After Nguyen examined Bell's teeth, she told him that she would schedule him back for an appointment to have the painful tooth filled or extracted. (*Id.* ¶ 26.) Bell got mad because he was in pain and needed to have the tooth treated at that time. (*Id.*) Nguyen called an officer to escort Bell from the dental clinic. (*Id.* ¶ 27.)

On September 29, 2011, no ducat came for Bell to see a dentist. (*Id.* ¶ 32.) Bell thought "they had it in for him," to protect Nguyen. (*Id.*) On September 30, 2011, Bell was given an appointment with Dr. Marlais. (*Id.* ¶ 33.) Dr. Marlais said that the tooth had to be extracted because it was abscessed and could not be saved. (Id.) Dr. Marlais extracted the tooth in moments. (*Id.* ¶ 34). Dr. Marlais gave Bell ibuprofen and antibiotics and instructions about how to care for the extraction site. (*Id.* ¶ 35.)

On October 7, 2011, Bell saw Wise for a post-operation visit. (*Id.* ¶ 36). He was a different dentist than the Wise that Bell saw on September 1, 2011. (*Id.*)

## DISCUSSION

### I.     Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a

7

1  reasonable jury to return a verdict for the nonmoving party. *Id.*

2  The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party; if, as to any given fact, evidence produced by the moving party conflicts with evidence produced by the non-moving party, the court must assume the truth of the evidence set forth by the non-moving party with respect to that fact. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**II.     Claims**

Bell claims that Nguyen was deliberately indifferent to his serious dental needs because she accidentally drilled a hole in his tooth while she was cleaning it on November 19, 2009, she did not acknowledge her mistake and she did not treat this tooth until it had

to be extracted. Bell also claims that Nguyen was deliberately indifferent because she knew he was in pain, yet she did not prescribe pain medication for him. Bell claims that, on September 1, 2011, Wise was deliberately indifferent to Bell's serious dental needs because Wise failed to treat Bell's tooth even though he knew the tooth was causing Bell excruciating pain.

**A. Legal Standard for Deliberate Indifference to Serious Dental Need**

A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)). Serious medical needs may include dental care needs. *Hunt v. Dental Dep't.,* 865 F.2d 198, 200 (9th Cir. 1989) (dental care important medical need of inmates). Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *McGuckin*, 974 F.2d at 1060.

Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials have provided medical care. *Id.* at 1062. However, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). To prevail on a

1    claim involving choices between alternative treatments, a plaintiff must establish that the
2    course of treatment the doctors chose was "medically unacceptable under the
3    circumstances" and that they embarked on this course in "conscious disregard of an
4    excessive risk to [the plaintiff's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058–60 (9th
5    Cir. 2004). A claim of mere negligence related to medical problems is not enough to make
6    out a violation of the Eighth Amendment. *Franklin*, 662 F.2d at 1344.

### B. Claim Against Dr. Nguyen

Bell argues that the focus of this lawsuit should be on his tooth number 16 and that evidence showing that Nguyen adequately treated all of his other dental needs from December 2008 through 2011 is not relevant to his claim. This argument is unpersuasive. The manner in which Nguyen treated Bell's dental needs over an extended period of time is relevant to show her subjective state of mind toward Bell's dental health. Bell does not dispute that, except for tooth number 16, he has no complaints about how Nguyen treated his dental needs. In her declaration, Nguyen states, "At no time did I intentionally or knowingly cause Bell any pain, suffering, injury or harm. I was, at all times, motivated by genuine concern for Bell's health and well-being." Nguyen Dec. ¶ 31. The fact that Nguyen provided Bell with adequate treatment for many years in regard to many dental issues supports the conclusion that she did not subjectively intend to deny, delay or interfere with Bell's dental treatment.

Further, assuming that Nguyen accidentally drilled a hole in Bell's tooth number 16 while she was cleaning his teeth, that does not show that Nguyen was deliberately indifferent toward Bell's dental needs. Bell acknowledges that Nguyen's conduct was negligent, not intentional. Deliberate indifference requires an intentional act on the part of the defendant; negligence does not give rise to a claim of deliberate indifference. *See Franklin*, 662 F.2d at 1344.

A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *See id.* Bell's main complaint seems to be that Nguyen did not acknowledge that she drilled the hole in his tooth.

10

1   Nguyen eventually diagnosed Bell's tooth number 16 with decay on the outside, inflamed
2   gums, advanced bone loss and hyperemia. Bell and Nguyen had different opinions about
3   the cause of the problem with tooth number 16. That Nguyen's diagnosis was different
4   from Bell's does not establish that she was deliberately indifferent toward his serious
5   dental needs.

6       Bell states in his declaration that, at one visit with Nguyen, he asked her if tooth
7   number 16 could be filled and when she said no, it's best to leave it alone for now, Bell
8   decided that, if tooth number 16 could not be fixed, he "might as well hang onto it until I
9   can no longer stand it." Opp., Statement of Facts ¶ 5. At that time, at least, Bell agreed
10  with Nguyen's treatment plan for tooth number 16.

11      Nguyen did not treat or see Bell from October 2010 to September 2011. During
12  this time, Bell saw several other dental professionals and the medical records of these
13  visits do not indicate that Bell mentioned a hole in his tooth or that he was experiencing
14  pain from a hole in his tooth. Bell acknowledges that other dentists worked on his teeth for
15  the mouth-guard and deep gum cleaning which "worked out fine." *Id.* ¶ 6. Nguyen was
16  not responsible for failing to treat Bell's tooth during the time when he was being treated
17  by other dental professionals.

18      According to Bell's own statements, it was not until June 2011 that he began
19  experiencing pain in tooth number 16. This was eight months after he last saw Nguyen
20  and more than one year after she allegedly drilled the hole in his tooth in November 2009.
21  It was not until August 29, 2011, that Bell sent a health care request informing dental staff
22  that he was in pain. It was not until September 27, 2011 that Bell again saw Nguyen.
23  Nguyen's progress notes of this visit indicate that Bell told her that his "tooth has a hole in
24  it," that she examined the tooth and saw swelling and decay around it and recommended
25  extraction. Motion, Ex. A, AGO-00030. Nguyen raised Bell's priority status to DPC 1c
26  and scheduled him for extraction of tooth number 16. (Nguyen Dec. ¶ 27.) Although Bell
27  did not get tooth number 16 extracted on September 27, 2011, the day he saw Nguyen,
28  three days later, on September 30, 2011, Dr. Marlais extracted it. This evidence shows

11

1  that, contrary to Bell's claims, on September 27, 2011, Nguyen examined Bell's tooth
2  number 16, realized it needed immediate treatment and raised his priority status, ensuring
3  that he received the necessary treatment three days later.  This evidence shows that
4  Nguyen did not delay or deny Bell treatment for his serious dental need.
5       Bell also faults Nguyen for failing to prescribe pain medication for him on
6  September 27, 2011, when she knew he was in pain from tooth number 16.  However,
7  Nguyen's notes indicate that the CTF medical department had prescribed morphine and
8  acetaminophen for other pain Bell was experiencing.  Motion, Ex. A, AGO-00030.
9  Nguyen states that, because Bell was already taking pain medication, she did not prescribe
10  additional pain medication for him.  Nguyen Dec. ¶ 27.  Bell's wish for more pain
11  medication establishes that he had a difference of opinion with Nguyen's conclusion that
12  he was already receiving sufficient pain medication.  As stated previously, a difference of
13  medical opinion is insufficient to establish deliberate indifference.  *See Toguchi*, 391 F.3d
14  at 1058 (difference of opinion regarding medication insufficient to establish deliberate
15  indifference unless plaintiff shows defendant's chosen choice was unacceptable under the
16  circumstances and was chosen intentionally in disregard of an excessive risk to the
17  plaintiff's health).
18       In summary, viewing the evidence in the light most favorable to Bell, he has failed
19  to raise a genuine dispute of material fact showing that Nguyen was deliberately
20  indifferent to his serious dental need.  The undisputed evidence shows that Nguyen
21  provided Bell with proper dental care over a number of years for different dental health
22  issues.  That Nguyen allegedly accidentally drilled a hole in Bell's tooth on November 19,
23  2009 is insufficient to show that she acted intentionally, which is required to show
24  deliberate indifference.  Nguyen was not responsible for failing to treat Bell from October
25  2010 through September 2011 when other professionals treated him.  When Bell next saw
26  Nguyen on September 27, 2011 with a painful tooth number 16, Nguyen diagnosed the
27  condition, informed Bell of her findings, and expedited extraction of the painful tooth, thus
28  ensuring Bell received adequate dental care.  She noted that Bell was receiving pain

1  medication for non-tooth related pain and deemed that sufficient for Bell's pain from tooth
2  number 16.  This difference of opinion regarding pain medication is insufficient to
3  establish deliberate indifference.  Therefore, Nguyen's actions demonstrate that
4  subjectively she intended to provide Bell with proper care, not that she intended to
5  disregard or be indifferent to his dental care.
6  Accordingly, summary judgment on this claim is granted in favor of Nguyen.

**C. Claim Against Wise**

Bell claims that on September 1, 2011, Wise was deliberately indifferent to his serious need to get treatment for his infected tooth number 16 by refusing to treat him. However, defendants submit evidence showing that, on September 1, 2011, Bell was treated by Dr. Marlais, not by Wise.  (Motion, Ex. A, AGO-0031, Sept. 1, 2011 progress note by Dr. Marlais.)  In his opposition, Bell insists that the person he saw on September 1, 2011 was Wise, but acknowledges that, on October 6, 2011, he was treated by Wise and that this person had a different appearance than the Wise he saw on September 1.  Bell argues that the dental professionals lied about their identities in order to avoid working on his tooth. Opp., Statement of Facts ¶ 36.  Defendants' explanation for this confusion is that Bell probably received a ducat to see Wise but that he ended up seeing Dr. Marlais, which can happen if one dentist finishes with his scheduled appointments before another dentist on a particular day.  Reply at 5, n.1.

In any event, whether Bell saw Wise or Dr. Marlais is not dispositive because the dentist who saw Bell on September 1, 2011 treated him by conducting a triage examination, ordering an x-ray and advising extraction or a sedative filling of tooth number 16. Motion, Ex. A, AGO-00031.

Although Bell's tooth was not extracted that day as he wished, he received appropriate dental care on September 1, 2011.  The dentist that examined Bell that day set the procedure in motion so that Bell could have tooth number 16 expeditiously treated by extraction or filling.  This treatment does not show that the dentist was deliberately delaying or denying necessary dental treatment to Plaintiff.  As discussed above, on

September 30, 2011, Dr. Marlais extracted tooth number 16, thus providing the care Bell sought.

Viewing the evidence in the light most favorable to Bell, he fails to show a genuine issue of material fact that Wise was deliberately indifferent to Bell's serious dental needs. Therefore, summary judgment on this claim is granted in favor of Wise.

### C. Request to Amend Complaint

In the event that defendants' motion for summary judgment is denied, Bell seeks leave to amend his complaint to add additional defendants. In light of the fact that defendants' motion for summary judgment is granted, this request is denied as moot.

## CONCLUSION

Bell having failed to show that there are genuine issues of material fact as to any of his claims, defendants' motion for summary judgment (doc. no. 24) is GRANTED as to all claims against defendants Nguyen and Wise.

The Clerk shall enter judgment in favor of all defendants as to all claims, terminate Docket No. 24, and close the file.

**IT IS SO ORDERED.**

**Dated:** April 15, 2014

WILLIAM H. ORRICK
United States District Judge

P:\PRO-SE\WHO\CR 13\Bell v Nguyen 13-1987 MSJ2.rmh.docx

14

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE BELL,<br><br>            Plaintiff,<br><br>   v.<br><br>DR. CHI NGUYEN, et al,<br><br>            Defendant.<br>_____/ | Case Number: CV13-01987 WHO<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 15, 2014, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail.

Willie Bell H-90929
Central Institution for Men
P.O. Box 600 West Bldg. 252 U
Chino, CA 91708-0600

Dated: April 15, 2014

Richard W. Wieking, Clerk
            By: Jean Davis, Deputy Clerk